UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | | |
|---|---|---|---|
| BOBBY LEE PORTER, JR., | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 2:23-CV-126-KAC-CRW |
| | ) | | |
| MIKE FRALEY, SHERIFF MATT | ) | | |
| PATTERSON, CAPTAIN RONALD | ) | | |
| GOINS, SGT. STEVE TIPTON, and CPL. | ) | | |
| RICKY ANDERS, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate of the Washington County Detention Center who was previously housed at the Carter County Detention Center, filed (1) a pro se complaint for violation of 42 U.S.C. 1983 arising out of incidents during his incarceration at the Carter County Detention Center [Doc. 2] and (2) a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court (1) **GRANTS** Plaintiff's request to proceed *in forma pauperis* and (2) **DISMISSES** this action for failure to state a claim.

I.  **MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). It appears from Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] that he cannot pay the filing fee in one lump sum. Accordingly, under 28 U.S.C. § 1915, the Court **GRANTS** the Motion [Doc. 1].

Plaintiff is **ASSESSED** the civil filing fee of three hundred fifty dollars ($350.00). The Court **DIRECTS** the custodian of Plaintiff's inmate trust account to submit to the Clerk, U.S.

District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account **shall** submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. *See* 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Court **DIRECTS** the Clerk to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Court also **DIRECTS** the Clerk to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     COMPLAINT SCREENING

### A.     Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v.*

*Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim.  *Twombly*, 550 U.S. at 555, 570.  Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts are insufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 681.  However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Allegations of Complaint

On May 22, 2023, after Plaintiff got in a fight with another inmate at the Carter County Jail, Jail officials placed Plaintiff on lockdown [Doc. 2 at 3].  Two days later, Defendant Sergeant Ronald Goins wrote a disciplinary report against "only" Plaintiff for the fight [*Id.* at 3-4].  Plaintiff claims that this disciplinary report violated his Eighth Amendment rights because the inmate handbook provides that "'fighting' occurs when 2 or more inmates engage in a physical altercation involving the exchange of blows, shoves, kicks, or any offensive conduct" [*Id.* at 4].

Defendants Sergeant Steve Tipton and Sergeant Ricky Anders served Plaintiff with the disciplinary report and asked if he wanted to appeal it [*Id.*].  Plaintiff believed he would see the disciplinary board, so he "felt there was no need to argue" with an officer who "[Plaintiff] believe[s] to be a bigot" [*Id.*].  According to Plaintiff, the acts of Defendants Tipton and Anders in serving the disciplinary report on him and "intentionally avoiding showing, explaining, and having [Plaintiff] sign the [d]isciplinary [r]eport correctly . . . a[bett]ed" Defendant Goins in violating

3

Plaintiff's Eighth Amendment rights [*Id.*]. Plaintiff also claims that these acts violated his "Fifth Amendment" rights, [*id.*], which the Court liberally construes as alleging a violation of his right to due process by the State under the Fourteenth Amendment.

Plaintiff then returned to his cell and talked to other inmates, at which point he realized that his decision not to appeal the disciplinary report meant that he would not get a hearing [*Id.*]. Accordingly, within five (5) minutes of returning to his cell, Plaintiff called Officer Sherffee and explained that he had misunderstood what he had signed and did want to have a hearing, and he therefore asked that Officer Sherffee tell this to Defendant Tipton [*Id.*]. When Officer Sherffee returned about thirty (30) minutes later, he told Plaintiff that Defendant Tipton had stated that Plaintiff did understand, and that Defendant Tipton would not allow Plaintiff "to resign the report" [*Id.*].

The next day, Plaintiff told Lieutenant Scalf, who oversees disciplinary board hearings, about his situation, and she told Plaintiff that she would look into it [*Id.*]. On the following day, "Sgt. Micheal Gray" told Plaintiff that Lieutenant Scalf had spoken to him, and Sgt. Gray asked Plaintiff if he was sure that he wanted to have a hearing, as he could be found guilty of a more serious offense [*Id.* at 4-5]. Plaintiff said that he wanted a hearing, and Sgt. Gray said the hearing would not be held until the following Tuesday because of the weekend and holiday [*Id.* at 5].

Six days later, Plaintiff asked Sgt. Gray why he had not had a hearing, and "Sgt. Gray said that he would send Lt. Scalf an email because [the] [d]isciplinary [r]eport wasn't served [and] signed properly [and] he wanted to make sure all the I's were dotted [and] T's crossed" [*Id.*]. Two days after that, Plaintiff saw Lieutenant Scalf again and asked about the hearing, at which point Lieutenant Scalf told him "that she was told to leave it the way it was" [*Id.*]. Plaintiff sent a request to speak to Defendant Matt Patterson, who had not responded to the request Plaintiff had sent more

4

than a week before, which Plaintiff claims violated his Fifth and Eighth Amendment rights because he had been on lockdown for two (2) weeks by this time [*Id.*].

After Plaintiff had been on lockdown for twenty-three (23) days, during which time he was denied the right to file an electronic grievance, he filed a paper grievance [*Id.*]. He also mailed a letter to Defendant "Sheriff Fraley about his role" in preventing Lieutenant Scalf from giving Plaintiff a hearing, which Plaintiff alleges violated his Fifth and Eighth Amendment rights [*Id.*].

Plaintiff states that the events in his complaint have resulted in his access to his family and friends, access to recreation with others, and access to commissary "suffer[ing]" [*Id.*], which the Court liberally construes to allege unspecified restrictions on these privileges. Plaintiff further alleges that he has experienced mental, emotional, and physical distress [*Id.*]. As relief, Plaintiff asks for monetary damages from each Defendant, for each Defendant to be reprimanded, and a transfer to avoid retaliation [*Id.* at 6].

### C. Analysis

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It is unclear whether Plaintiff was a pretrial detainee or an inmate at the time of the incidents in the complaint. And this status makes a difference in the applicable law. If Plaintiff was a pretrial detainee, the Fourteenth Amendment would apply to his Section 1983 claim. *See Lawler as next friend of Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919, 926 (6th Cir. 2024). If, instead, he was an inmate, the Eighth Amendment would apply. *See id.* Here, however, even under the arguably greater

5

protections of the Fourteenth Amendment,[1] his complaint fails to state a claim upon which relief may be granted under Section 1983.

### 1. Disciplinary Report

First, despite admitting that he engaged in a fight, Plaintiff asserts that the filing of a disciplinary report "against only [him]" based on a fight violated his constitutional rights because the inmate handbook definition for fighting states that two or more people are involved [Doc. 2 at 2-3]. However, Plaintiff's complaint does not allow the Court to plausibly infer that the disciplinary report against Plaintiff for fighting violated either the Jail's internal policies or Plaintiff's constitutional rights.

Specifically, while Plaintiff states that the disciplinary report that he received was only against him, he does not assert that the person with whom he fought was not disciplined. Even if this were the case, the inmate handbook provision upon which Plaintiff relies in his complaint does not require that Jail officials discipline both inmates involved in a fight. Moreover, even if the Court assumes that Plaintiff was the only inmate to receive a disciplinary report based on the fight in a manner that violated the Jail's policy, this does not rise to the level of a constitutional violation. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (holding that a failure to follow a policy directive does not rise to the level of a constitutional violation because a policy directive does not create a constitutional right or protectable liberty interest); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (providing that "the filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983.").

---

[1] *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (describing the protections of the Due Process Clause to be "similar if not greater" than those under the Eighth Amendment) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998)); *see also Griffith v. Franklin Cnty., Ky.,* 975 F.3d 554, 566 (6th Cir. 2020).

Second, to the extent that Plaintiff's complaint can be liberally construed to allege a claim for violation of his equal protection rights based on Jail officials' act of filing a disciplinary report for the fight only against him, Plaintiff does not set forth facts from which the Court could find that any such claim is plausible. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. It reflects the principle that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Even if the Court assumes that the inmate with whom Plaintiff fought did not receive a disciplinary report, nothing in Plaintiff's complaint allows the Court to plausibly infer that this inmate was similarly situated to Plaintiff with regard to his role in the fight or otherwise such that the Court could plausibly infer that the fact that Jail officials only filed a disciplinary report against Plaintiff violated the Equal Protection Clause. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (finding that a complaint failed to state an Equal Protection claim where it did not "make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants"); *Nali v. Ekman,* 355 F. App'x 909, 913 (6th Cir. 2009) (stating that a claim for race discrimination in prison discipline must be supported by allegations "that the people not disciplined were similarly situated and of a different race" to state an Equal Protection claim). Accordingly, Plaintiff's allegations

7

regarding Jail officials filing the disciplinary report against only him for the fight fail to state a claim upon which relief may be granted under Section 1983.

### 2. Hearing and Lockdown

Plaintiff's remaining claims arise out of his allegations that (1) officers had him sign his disciplinary report for fighting in a manner that meant he agreed not to have a hearing without first properly showing and explaining the report to him; (2) when he then sought to re-sign the disciplinary report and otherwise sought a disciplinary hearing, Jail officials denied his requests; and (3) Jail officials then placed him on lockdown due to the disciplinary report, which restricted his ability to file an electronic grievance and his access to his family and friends, recreation with others, and commissary. Plaintiff indicates that these incidents violated both his right to due process and rights under the Eighth Amendment. But his claims sound in the Fourteenth Amendment, not the Eighth. And as set forth above, the Court presumes for Plaintiff's benefit that he was subject to the arguably greater protections of the Fourteenth Amendment[2] when these events occurs. For the reasons set forth below, these allegations fail to state a claim upon which relief may be granted under Section 1983.

#### a. Failure to Provide a Hearing

To state a due process claim based on the failure to provide a hearing following the provision of a disciplinary report, Plaintiff must have a protected interest in avoiding the deprivation that resulted from the disciplinary report. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish

---

[2] To the extent Plaintiff was convicted at the time of these events, his complaint would fail to state a claim under the Eighth Amendment's ban on "cruel and unusual" punishment. And the Court would dismiss his claims on that basis as well.

that one of these interests is at stake."). That is, Plaintiff must show that being deprived of an interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

However, Plaintiff has no liberty interest in either his housing placement or in his security classification. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242 (1976). And "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citations omitted); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

Instead, disciplinary confinement is considered atypical and significant only in "extreme circumstances," *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), such as a "prolonged or indefinite" period in restrictive conditions, *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). Plaintiff's allegation that his placement in lockdown restricted his visitation, commissary, and recreation privileges does not rise to the level of a due process violation. *See Jarrett v. Greene*, No. 1:22-CV-456, 2022 WL 12795466, at *12 (S.D. Ohio Oct. 24, 2022) (finding that prisoners do not have a liberty interest in visitation, phone, commissary, or television privileges, and loss of these privileges "d[id] not impose an atypical and significant hardship" (citations omitted)); *Harris v. Erdos*, No. 1:20-CV-120, 2021 WL 4227406, at*3 (S.D. Ohio, Aug. 24, 2021) (finding that the "plaintiff's loss of recreational privileges does not constitute an 'atypical and significant hardship' that violates plaintiff's Fourteenth Amendment due process rights under *Sandin*" (citations omitted)). Additionally, the length of Plaintiff's

9

confinement on lockdown, approximately twenty-three (23) days, does not support a finding that this confinement implicated a liberty interest. *See McMann v. Gundy*, 39 F. App'x 208, 209-10 (6th Cir. 2002) (finding that a five-month segregation placement without a hearing did not implicate due process rights); *Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *2-3 (W.D. Mich. Mar. 3, 2021) (holding that a pretrial detainee's ten-month placement in segregation failed to implicate a liberty interest entitling him to due process). Moreover, Plaintiff's inability to file an electronic grievance during his time on lockdown also does not raise due process concerns. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (stating that "[a]ll circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").

Because Plaintiff has not set forth any facts from which the Court can plausibly infer that he was deprived of a protected interest as a result of the disciplinary report against him, due process did not require Jail officials to provide him a hearing regarding that disciplinary report. Thus, the complaint does not state a due process claim upon which relief may be granted under Section 1983.

### b. Conditions of Lockdown

It appears that Plaintiff also challenges the conditions of confinement while he was on lockdown. A conditions-of-confinement claim has both an objective and a subjective component. *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The objective element requires an allegation of a "sufficiently serious" deprivation. *Id.* It is well established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Thus, only allegations of "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" support a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (citations and quotations omitted). As to the subjective element, a jail official may not punish a

10

detainee through deliberate indifference to the conditions of his confinement. *See Bell*, 441 U.S. at 535; *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). A jail official is deliberately indifferent to a pretrial detainee's conditions of confinement when he acts "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "Conditions-of-confinement cases are highly fact-specific." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (citation omitted).

None of Plaintiff's allegations regarding the conditions of his confinement during lockdown allow the Court to plausibly infer that any Defendant violated Plaintiff's rights. Plaintiff's access to electronic grievances, visitation, commissary, and recreation were limited while he was on lockdown. But there are no allegations that would allow the Court to infer that such limitations presented a high risk of harm to Plaintiff. Accordingly, the complaint fails to state a claim.

### III. CONCLUSION

For the reasons set forth above:

1. The Court **GRANTED** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1];

2. The Court **ASSESSED** Plaintiff the civil filing fee of $350.00;

3. The Court **DIRECTED** the custodian of Plaintiff's inmate trust account to submit the filing fee to the Clerk in the manner set for above;

4. The Court **DIRECTED** the Clerk to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted. Accordingly, the Court **DISMISSES** this action under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

11

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. Should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. An appropriate judgment shall enter.

    **SO ORDERED.**

    **ENTER:**                              s/ Katherine A. Crytzer
                                                 KATHERINE A. CRYTZER
                                                 United States District Judge

12

Case 2:23-cv-00126-KAC-CRW   Document 6   Filed 05/06/24   Page 12 of 12   PageID #: 33